UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENT B. GRADDY, Sr., | No. 2:14-cv-0901 DAD P |
| Plaintiff, | |
| v. | ORDER |
| D. DING, | |
| Defendant. | |

      Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, together with a request for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF). However, in the complaint pending before the court he challenges conditions of his confinement when he was incarcerated at Mule Creek State Prison (MCSP).

      Plaintiff's in forma pauperis application is incomplete. Plaintiff did not provide the date of his signature on his affidavit submitted in support of his application (see ECF No. 2 at 2); nor was the certificate portion of the application filled out and signed by an authorized prison official. See 28 U.S.C. § 1915(a)(2). For these reasons, plaintiff will be provided another opportunity to submit a fully completed application to proceed in forma pauperis.

/////

1

Plaintiff's complaint is also incomplete. Again, on the complaint plaintiff did not provide the date of his signature. (See ECF No. 1 at 3.) For this and the following reasons, the complaint will be dismissed and plaintiff will be granted leave to file an amended complaint.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

Plaintiff makes the following allegations in his complaint and attached exhibits filed April 11, 2014. (ECF No. 1.) Plaintiff, a Muslim, was denied participation in the month-long Ramadan activities at MCSP during the summer of 2013. The official denial was premised on plaintiff's "C-status," by application of MCSP Departmental Operations Manual (DOM) Supplement § 101060.6.4 (Inmate Attendance),[1] which provides:

> Inmates on "C" status may be denied access to a religious service depending on security needs and supervision. Inmates on "C" status will be directed to complete a standard Request for Interview Form requesting authorization to attend one primary service a week.

(ECF No. 1 at 4.) In his complaint plaintiff names one defendant, Sergeant D. Ding, who, on July 8, 2013, denied plaintiff's July 3, 2013 Request for Interview (CDCR Form 22), on the following grounds:

> Inmates on "C" status may attend one primary religious service per week per DOM:101060.6.4. You have been instructed by the Chaplain on how you may participate in Ramada by fasting and praying in your assigned cell. You may attend one primary religious service per week. Use a CDCR Form 22 addressed to the Chaplain to request which primary service you would like to attend.

(ECF No. 1 at 9.)

In his complaint plaintiff levels the following allegation against defendant Ding:

> On June 28, 2013, I was informed by Officer Bradley that I would not be able to partake in Ramadan activities because of C-status

---

[1] The challenged provision is specific to MCSP, not CDCR generally. Cf. CDCR DOM § 101060.6.4.

2

> which I was on at that time.  I followed the appeal process which Officer Bradley and Sgt. Dickinson said that D. Ding told them that I couldn't partake in Ramadan activities due to MCSP Supplement DOM section 101060.6.4.

(Id. at 3.)  The complaint seeks the following relief: "To have the courts order MCSP to stop enforcing that policy [and] [f]or the courts to grant me 10,000 dollars in punitive damages." (Id.)

Although plaintiff was apparently transferred to SATF near the end of Ramadan or soon after its conclusion, he continued to pursue and exhaust his administrative grievance on the ground that he wanted to prevent future application of the challenged regulation to other MCSP inmates.  Plaintiff asserted that Ramadan is not a "service" but an entire month dedicated to Muslims.  He also asserted that he had been permitted to participate in Ramadan activities in 2009 and 2010, despite being on "C" status.

The Third Level Review response denying plaintiff's grievance provided in pertinent part:

> Contrary to appellant's claim, he is permitted to practice the religion of his choice as long as it is in compliance with institutional policy and security needs.  The decision to limit the appellant's ability to conduct religious services is within the institution's scope of authority.  In this case, the appellant was placed on "C" Status due to his misbehavior.  The TLR notes that the appellant does not have an absolute right to conduct his religious services as requested as institutional security takes precedence and may impact his services.

(ECF No. 1 at 5.  See also Id. at 7.)

The Third Level Review response to plaintiff's inmate grievance noted that plaintiff had not completed an Inmate Request for Interview to thereby request attendance at one primary service a week.  (Id. at 5.)[2]  The Third Level Review response also noted with approval the following Second Level Review finding:

> Any arguments related to the appellant's access to Ramadan while on C-status in prior years is irrelevant as the fact that a person was allowed to access an activity in the past does not constitute proof that they were appropriately allowed access.

(Id. at 4. See also Id. at 7.)

---

[2] The Second Level Review response to plaintiff's inmate grievance appears to indicate that at that time plaintiff was attending one primary service a week.  (Id. at 15.)

3

As noted above, plaintiff's complaint is deficient in several respects. Plaintiff does not identify a legal basis for his claim based upon his factual allegations. In his administrative grievances, plaintiff asserted that the challenged conditions violated his First Amendment right to practice his religion. However, because plaintiff is challenging application of an institutional regulation, it appears that his claim may be more appropriately one under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provides in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc–1(a).

Nevertheless, assuming application of RLUIPA to plaintiff's legal claim, the Act does not provide for plaintiff's requested relief. Plaintiff's transfer from MCSP to SATF rendered moot his claim for injunctive relief. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (an inmate's claims for injunctive or declaratory relief become moot when he is no longer subject to the challenged conditions); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969) (a court is unable to issue an order against individuals who are not parties to the suit pending before it). Because the regulation challenged by plaintiff is specific to MCSP, rather than a CDCR-wide regulation applicable to all California prisons, plaintiff's claim for injunctive relief has been rendered moot by his transfer.

Moreover, plaintiff's damages claim is not cognizable under RLUIPA. The Ninth Circuit Court of Appeals has held that a RLUIPA claim may not be maintained against prison officials in their individual capacities, Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014),[3] or in their official

---

[3] This ruling applies retroactively to cases, such as the instant case, that were filed prior to the Ninth Circuit's decision in Wood. See e.g. Hodges v. Sharon, Case No. 1:13-cv-00654 LJO SAB P, 2014 WL 5426410, *4 (E.D. Cal. Oct. 22, 2014) (and cases cited therein).

capacities, Alvarez v. Hill, 667 F.3d 1061, 1063 (9th Cir. 2012). Rather, a claim under RLUIPA may proceed only for injunctive relief against defendants acting within their official capacity and such a claim has been rendered moot in this action for the reasons discussed above.

For these reasons, plaintiff is unable to challenge the subject regulation under RLUIPA. While perhaps posing an even more difficult challenge, plaintiff may be able to rest his damages claim on the First Amendment's Free Exercise Clause and 42 U.S.C. § 1983. The Free Exercise Clause is implicated when a prison official, without justification that is reasonably related to a legitimate penological objective, burdens a prisoner's practice of religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner v. Safley, 482 U.S. 78, 89 (1987) (setting forth the factors to be considered in evaluating the constitutionality of a prison regulation),[4] and Ward v. Walsh, 1 F.3d 873, 876-77 (9th Cir. 1993) (holding that Turner continues to apply to prisoner free exercise claims)).

Although the government faces a lesser burden in demonstrating a legitimate government interest under the First Amendment than to demonstrate a compelling government interest under

/////
/////

---

[4] As summarized by the Ninth Circuit in Shakur, Turner sets forth the following four factors to be balanced in determining whether a prison regulation is reasonably related to a legitimate penological interest:

> (1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;"
>
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates;"
>
> (3) Whether "accommodation of the asserted constitutional right" will "impact ... guards and other inmates, and on the allocation of prison resources generally;" and
>
> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

Shakur, 514 F.3d at 884 (quoting Turner, 482 U.S. at 89-90).

RLUIPA,[5] plaintiff will be granted leave to file an amended complaint and restate his damages claim under the First Amendment's Free Exercise Clause and § 1983.

Should plaintiff elect to file an amended complaint, he must allege with particularity how each named defendant allegedly violated his constitutional rights. See e.g. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). The court discerns no presently valid basis for naming Sergeant Ding as a defendant in this action or, for that matter, any other prison official who was merely tasked with processing plaintiff's administrative requests and/or administrative grievance, and applying the challenged regulation.[6] The appropriate defendants to name in a challenge to the subject regulation are the MCSP officials responsible for its enactment and for ensuring its enforcement, e.g., the MCSP Warden and/or MCSP Associate Warden of Programs/Housing.

Should plaintiff elect to continue to pursue this action by filing an amended complaint, he shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The Amended Complaint must bear the docket number assigned to this case and be labeled "Amended Complaint." In any amended complaint he elects to file plaintiff must allege facts demonstrating how the conditions complained of resulted in a deprivation of his constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection

---

[5] Plaintiff is also informed that a legitimate government interest is demonstrated by the bona fide security needs of an institution. See e.g. Bell v. Wolfish, 441 U.S. 520, 557 n.38 (1979) (courts must defer "to the informed discretion of prison authorities . . . [to] make the difficult judgments which reconcile conflicting claims affecting the security of the institution").

[6] "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a specific defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). However, a defendant's alleged failure to grant plaintiff's administrative request or grievance does not state a constitutional claim. Because "[t]here is no legitimate claim of entitlement to a grievance procedure," Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), a claim that a prison official failed to resolve a particular grievance in a favorable manner is not cognizable under section 1983, see e.g. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), particularly when such decision rested on application of an institutional regulation.

between a defendant's specific actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Finally, Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. The amended complaint will supersede the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Therefore, in an amended complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is denied without prejudice.

2. Within thirty days from the date of this order, plaintiff shall submit a properly completed application to proceed in forma pauperis on the form provided with this order, or the fee of $400.00 ($350.00 filing fee plus $50.00 administrative fee);

3. Plaintiff's complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice and submit the following documents to the court:

    a. The completed Notice;

    b. A completed in forma pauperis application; and

    c. An original and one copy of the Amended Complaint.

5. The Clerk of the Court is directed to send plaintiff, together with a copy of this order, a blank Application to Proceed In Forma Pauperis By a Prisoner, and a blank Complaint for use by a prisoner pursuing a civil rights action.

6. Failure of plaintiff to timely comply with this order will result in a recommendation that this action be dismissed.

Dated: November 20, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENT B. GRADDY, Sr., | No. 2:14-cv-0901 DAD P |
| Plaintiff, | |
| v. | NOTICE |
| D. DING, | |
| Defendant. | |

    Plaintiff hereby submits the following documents in compliance with the court's order filed_____.

    _____        Completed IFP Application or $400.00 Fee

    _____        Amended Complaint

_____    _____
Date                                                   Plaintiff